## CYRUS N. BISHOP *v.* CHARLES H. WHEELER.

### *Evidence.*

The plaintiff's evidence tended to show, that the defendant agreed, if the plaintiff would take and pay for certain stock in a certain oil company, to purchase it of him upon certain considerations and conditions. The defendant denied such agreement; and testified that he had no interest in said company at the time of the alleged making of said agreement, only as owner of a certain amount of stock. On cross-examination, the defendant was asked if he had such interest in procuring the stock of said company to be taken, as to induce him to offer any other persons to buy and take their stock off their hands, if they would subscribe and pay for it; also, if he had such interest in said company as to induce him to make such offer to one W.; also, if he did not make such offer to W. *Held*, that none of said questions were admissible.

The defendant introduced two witnesses, whose testimony tended to corroborate his own as to the manner in which the plaintiff took his stock. Testimony was introduced during the trial, respecting the organization of said company, and the issue of its stock, from which the plaintiff claimed that it appeared that the defendant, and his said witnesses, acted fraudulently in the issue of said stock, and that the whole affair was a fraud, and claimed that that fact was a circumstance tending to diminish the credit due to their testimony; but the court ruled otherwise. *Held*, no error.

ASSUMPSIT. The plaintiff gave evidence tending to show, that he made a contract with the defendant, by which the defendant agreed that in case the plaintiff would take and pay for certain stock in a company called the Missisquoi Oil Company, the defendant would repurchase said stock of the plaintiff, upon certain considerations and conditions stated in the testimony. The defendant was a witness in his own behalf, and denied the making of the contract as claimed by the plaintiff, and testified that he had no interest in the oil company in question, at the time named, except that he was the owner of a certain amount of its stock. He stated that he might have told the plaintiff that one Hobby was willing to bind himself to purchase the stock in the manner claimed by the plaintiff; but that he never made any such statement in his own behalf. On cross-examination, the plaintiff's counsel put the following question to the defendant: "Had you such interest in procuring the stock of the Missisquoi Oil Company to be taken, as to induce you to offer to any person, to buy and take his stock off his hands, in case he would subscribe for

53

and pay for such stock ?" This question was objected to by the defendant's counsel, and the court refused to allow it to be put; to which the plaintiff excepted.

The plaintiff then inquired of the defendant, if he had such interest in said company as to induce him to make such an offer to Charles Wyman. To this question the defendant objected, and the court refused to allow the same to be put; to which the plaintiff also excepted.

The plaintiff then inquired of the defendant if he did make such an offer to the said Wyman; and to this the defendant objected, and the court refused to allow the question to be put; to which the plaintiff also excepted.

The trial proceeded, and the defendant introduced the testimony of one Wells and one Duclos, whose testimony tended to corroborate his own testimony, as to the manner in which the plaintiff took his said stock. In the course of the trial, testimony was introduced respecting the organization of said company, and the issue of its stock, from which the plaintiff claimed that it appeared that the defendant and said Wells and Duclos were acting fraudulently in said issue of stock, and that the whole affair was fraudulent, and that the fact that they were, in the very transaction in question, guilty of such fraud, was a circumstance tending to diminish the credibility of the defendant and his witnesses as to the transaction in question. Upon this point the court charged as follows:

"There has been a great deal of testimony put in, in reference to the transactions of this oil company; the act of incorporation has been put in; records of its meetings; and all that. That has nothing to do with this case, unless you can from that testimony, derive some aid in coming to a conclusion about what these parties actually contracted to do in reference to this particular transaction. We might concede that this was all a fraud from the start, yet this concession has no influence with you upon the question about whether any such contract was made or not. It don't affect the right of these parties. If you concede, upon the other hand, that the defendant acted in a fair, honorable manner, and that there was no fraud, that does not help him any, provided you find he made this contract as Mr. Bishop claims. Hence, all that testimony that has been introduced in reference to the formation

of this company, the number of shares, who held them, and what they held them for, is wholly immaterial, except as it aids you in coming to a conclusion as to the truth of what Mr. Wheeler or Mr. Bishop state in reference to this transaction about the 500 shares of stock. There is a great deal of that testimony that may help you in arriving at a just conclusion in reference to that particular question. I will say to you, gentlemen, that if the question was between two of you jurymen, concerning the sale of a horse, about what the contract was, the isolated fact that one of you defrauded the man you got it of, has no relation to the contract standing alone. So, gentlemen, all these matters relating to what the company did in Pennsylvania, unless connected with the subject-matter, so as to enable you to judge, under oath, as to what took place when Mr. Bishop took this stock—unless it is so connected that you can weigh it in connection with these questions—it is to be laid entirely out of the case. Hence, gentlemen, I do not feel called upon to follow the counsel upon both sides, in reference to this stock, and in reference to the organization of that company, and to give you particular instructions about all that has been said in argument upon the one side or the other, as to the fairness of this transaction or that transaction, connected with this oil company. If you can derive any light out of the whole thing, that enables you to judge of the truthfulness of what Mr. Wheeler or Mr. Bishop has said, weigh it for that purpose, and give it its proper influence." To which the plaintiff also excepted.

*Noble & Smith, Bryant Hall,* and *A. G. Safford,* for the plaintiff.

The questions proposed by the plaintiff in cross-examination, were pertinent to the issue in relation to the interest of the defendant in the oil company ; an issue which he had raised in his examination in chief. The questions were pointed directly to the interest which he had denied ; and, if answered in the affirmative, as we have a right to assume they would have been, this testimony would undoubtedly have gone a great ways, in correcting the erroneous impression which the defendant had skillfully conveyed to the jury in relation to his interest in the company, at least so far as that interest bore upon his motive to make this contract. 1 Greenl. Ev. § 446 ; *Batchelder* v. *Kinney,* 44 Vt. 150.

The charge was erroneous. It was well calculated to mislead

the jury into believing that it was their duty to give the same weight to the testimony of a dishonest man, that they would to an honest one. Unless looked at critically, it carries the idea that all questions of fraud on the part of the defendant and his two witnesses, are to be left out of their consideration of the case.

It was erroneous in what it did not contain. The jury could not so have understood it. The plaintiff's claim was, that the jury should be instructed how to weigh the testimony of the defendant and his two witnesses, in the event of the jury's finding a conspiracy among them to defraud the plaintiff, and others; but the charge is silent upon that point. The court stated the case to the jury, upon the concession that the oil company was all a fraud, and the defendant the originator and executor of that fraud. While such a state of facts might not have " any influence upon the question whether any such contract was made or not," it ought to have had some influence as to the amount of credit they should give to the defendant and his witnesses. The plaintiff was entitled to specific direction to the jury, that if they found that this oil company was " all a fraud from the start," they should weigh that fact in connection with the credibility of the defendant and his two witnesses.

*Edson & Rand*, for the defendant.

The court did not err in refusing to admit the evidence offered, as it was remote, and irrelevant to the issue between the parties, and no inference could be drawn from it. It is a well-settled general rule, that the credit of a witness cannot be impeached by proof of particular immoral conduct, or of particular facts. 1 Greenl. Ev. § 461 ; 1 Stark. Ev. 145, § 28 ; Swift Ev. 143 ; 2 Phil. Ev. 430, § 5 ; *United States* v. *Van Sickle*, 2 M'Lean, 219 ; *Jackson* v. *Lewis*, 13 Johns. 504 ; *Walker* v. *The State*, 6 Blackf. (Ind.) 1 ; *Bakeman* v. *Rose*, 14 Wend. 105 ; s. c. 18 Wend. 146 ; *State* v. *Randolph*, 24 Conn. 363 ; *Commonwealth* v. *Churchill*, 11 Met. 538 ; *Commonwealth* v. *Moore*, 3 Pick. 194 ; *Hoitt* v. *Moulton*, 1 Foster (N. H.), 586 ; *Barton* v. *Morphes*, 2 Dev. (N. C.) 520 ; *Rixey* v. *Bayse*, 4 Leigh, (Va.) 330 ; *Sorrelle* v. *Craig*, 9 Ala. 534 ; *Nugent* v. *The*

*State*, 18 Ala. 521; *Thayer* v. *Boyle*, 30 Me. 475; *Phillips* v. *Kingsfield*, 19 Me. 375; *State* v. *Bruce*, 25 Me. 71; *Frye* v. *Bank of Illinois*, 11 Ill. 367; *Crabtree* v. *Kile*, 21 Ill. 180; *Thurman* v. *Virgin*, 18 B. Monr. (Ky.) 785; *Craig* v. *State of Ohio*, 5 Ohio, 605; *McDonald* v. *Garrison*, 2 Hilton (N. Y.) 510; *Boon* v. *Weathered*, 23 Texas, 675; 4 Watts, 380; 6 Black, 1; 3 S. & R. 337; 11 S. & R. 199. The courts of this state, at an early period, adopted the rule, which has been uniformly adhered to, that evidence as to the character of a witness, should be limited to his general character for truth and veracity, and that evidence as to particular instances of moral delinquency, is not admissible; his character for truth being all that is pertinent —and all that the jury should inquire into. *Morse* v. *Pineo*, 4 Vt. 281; *State* v. *Smith*, 7 Vt. 141; *Spears* v. *Forest*, 15 Vt. 435; *Crane* v. *Thayer*, 18 Vt. 162; *Willard* v. *Goodenough*, 30 Vt. 393, per BARRETT, J.

The opinion of the court was delivered by

Ross, J. The defendant, without objection, testified that he had no interest in the oil company at the time the plaintiff claimed he made the contract sought to be enforced, beyond the ownership of a certain amount of its stock. The defendant testified to this, to convince the jury that he had not any interest which would induce him to enter into such a contract with the plaintiff as the plaintiff claimed. In this state of the evidence, it was competent for the plaintiff to show that the defendant had a greater interest in the oil company than that of a stockholder. He might show such interest by the defendant or any other witness, to rebut the testimony of the defendant on that point. The questions proposed to be put to the defendant by the counsel for the plaintiff, and which were held to be inadmissible by the court, did not call for answers which would tend directly to disprove the testimony given by the defendant. It is apparent that the plaintiff's counsel designed, by the answers, to get something before the jury from which he might argue that the defendant's testimony on this point was untrue, though the answers might not have any direct tendency to disprove the defendant's evidence. The first two

questions are hypothetical, and, without asking what interest the defendant had in having the stock in the oil company taken, called upon him to answer whether he had *such* an interest in procuring the stock of the company to be taken, as induced him to make to any person, or a certain person, offers similar to the one which the plaintiff claimed the defendant made to him.   We think these questions were inadmissible.   A witness, though a party, has some rights which it is proper for the court to compel counsel to respect; and among them, is the right to have the question so framed that it can be answered directly, without conveying to the jury an impression which the witness does not intend.   These questions were not of that character.   The witness might have answered them in the affirmative, without contradicting his evidence in chief.   Yet, without further explanation, from a skillful argument, the jury might have been led to believe that his direct testimony was untrue.   The third question excluded was objectionable as calling for immaterial testimony.   If the defendant had admitted that he did make an offer to Charles Wyman in character like the one the plaintiff claimed that the defendant made to him, it would not have tended to show that he made the contract in issue with the plaintiff.   We find no error in the refusal of the court to allow these questions to be put.

The only other exception relates to the charge of the court. The plaintiff claimed that some of the testimony tended to show that the defendant and some of the witnesses produced by him, had acted fraudulently in the organization of the company and in the issue of its stock.   These acts, if established, did not form a part of the transaction in issue between the parties.   The question between them was whether the defendant entered into the contract claimed by the plaintiff.   These fraudulent acts of the defendant and his witnesses, if they were such, the plaintiff claimed, tended to discredit the defendant and his witnesses in respect to their evidence regarding the transaction in question.   It is well settled that a witness cannot be impeached by showing that he has acted fraudulently or dishonestly in other independent transactions.   We think the court were correct in instructing the jury that if they found that the defendant and his witnesses had acted

fraudulently in the matters claimed by the plaintiff's counsel, it did not show, nor tend to show, that the defendant made the contract claimed by the plaintiff. When the court told the jury, " If you can derive any light out of the whole thing, that enables you to judge of the truthfulness of what Mr. Wheeler or Mr. Bishop has said, weigh it for that purpose, and give it its proper influence," it went fully as far as the plaintiff had the right to demand.

Judgment affirmed.